*1409974*

RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

FILED
ENTERED

JAN - 2 2019

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| United States of America | | |
|---|---|---|
| | Plaintiff(s) | CASE NUMBER **2:18-mj-0988-PAL** |
| v. | | CR **07-01268** |
| ALFONSO BERNAL BARRON | Defendant(s) | **WARRANT FOR ARREST** |

TO:   UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest   **ALFONSO BERNAL BARRON**

and bring him/her forthwith to the nearest Magistrate Judge to answer a(n): ☐Complaint ■Indictment
☐Information   ☐Order of Court   ☐Probation Violation Petition   ☐Violation Notice

charging him/her with: (ENTER DESCRIPTION OF OFFENSE BELOW)

**Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine**
**Possession with Intent to Distribute Cocaine**

in violation of Title **21**: United States Code, Section(s)   **846:841(a)(1), (b)(1)(B):**

| Sherri R. Carter | | |
|---|---|---|
| NAME OF ISSUING OFFICER | | November 14, 2007     LOS ANGELES, CALIFORNIA |
| Clerk of Court | | DATE AND LOCATION OF ISSUANCE |
| TITLE OF ISSUING OFFICER | | |
| | | BY:   VICTOR B. KENTON |
| SIGNATURE OF DEPUTY CLERK | | NAME OF JUDICIAL OFFICER |

## RETURN

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION):

| | |
|---|---|
| DATE RECEIVED | NAME OF ARRESTING OFFICER |
| DATE OF ARREST | TITLE |
| DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO | SIGNATURE OF ARRESTING OFFICER |

**WARRANT FOR ARREST**

CR-12 (07/04)

PAGE 1 OF 2

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ORIGINAL

2:18-mj-0988-PAL    **CASE SUMMARY**

| | |
|---|---|
| Case Number __07-01268__ | Defendant Number _8_ |
| U.S.A. v. _ALFONSO BERNAL BARRON_ | Year of Birth __1965__ |
| ☑ Indictment ☐ Information | Investigative agency (FBI, DEA, etc.) _DEA_ |

FILED 2007 NOV 14 PM 3:0...

**NOTE: All items are to be completed. Information not applicable or unknown shall be indicated as "N/A".**

**OFFENSE/VENUE**

a. Offense charged as a:    ☐ Petty Offense
   ☐ Misdemeanor    ☐ Minor Offense    ☑ Felony
b. Date of offense _8/7/06-7/11/07, 8/16/07-8/29/07, 11/07_
c. County in which first offense occurred
   _Los Angeles_
d. The crimes charged are alleged to have been committed in:
   CHECK ALL THAT APPLY
   ☑ Los Angeles       ☐ Ventura
   ☐ Orange            ☐ Santa Barbara
   ☐ Riverside         ☐ San Luis Obispo
   ☐ San Bernardino    ☐ Other _____
Citation of offense _21 U.S.C. 846, 21 U.S.C. 841(a)(1),_
   _(b)(1)(A), (b)(1)(B)_

**RELATED CASE**

Has an indictment or information involving this defendant and the same transaction or series of transactions been previously filed and dismissed before trial?    ☑ No    ☐ Yes
   IF YES   Case Number _____

Pursuant to Section 11 of General Order 224, criminal cases may be related if a previously filed indictment or information and the present case:
a. arise out of the same conspiracy, common scheme, transaction, series of transactions or events; or
b. involve one or more defendants in common, and would entail substantial duplication of labor in pretrial, trial or sentencing proceedings if heard by difference judges.
Related case(s), if any:  MUST MATCH NOTICE OF RELATED
CASE  _CR No. 07-522-ER_

**PREVIOUSLY FILED COMPLAINT**

A complaint was previously filed on: _10/31/07_
   Case Number _07-1844M_
   Charging _21 U.S.C. 846_

The complaint:       ☑ is still pending
   ☐ was dismissed on: _____

**COMPLEX CASE**

Are there 8 or more defendants in the Indictment/Information?
   ☑ Yes*    ☐ No

Will more than 12 days be required to present government's evidence in the case-in-chief?
   ☑ Yes*    ☐ No

*AN ORIGINAL AND 3 COPIES OF THE NOTICE OF COMPLEX CASE MUST BE FILED 2 BUSINESS DAYS BEFORE THE ARRAIGNMENT IF EITHER YES BOX IS CHECKED.

**Superseding Indictment/Information**

This is the _____ superseding charge, i.e. 1st, 2nd.
The superseding case was previously filed on:

Case Number _____

The superseded case:
   ☐ is still pending before Judge/Magistrate Judge
   _____

   ☐ was previously dismissed on _____

Are there 8 or more defendants in the superseding case?
   ☐ Yes*       ☐ No

Will more than 12 days be required to present government's evidence in the case-in-chief?
   ☐ Yes*       ☐ No

Was a Notice of Complex Case filed on the Indictment or Information?
   ☐ Yes       ☐ No

*AN ORIGINAL AND 3 COPIES OF THE NOTICE OF COMPLEX CASE MUST BE FILED 2 BUSINESS DAYS BEFORE THE ARRAIGNMENT IF EITHER YES BOX IS CHECKED.

Is an interpreter required: ☑ Yes    ☐ No
IF YES, list language and/or dialect:
_Spanish_

CR-72 (12/05)                    **CASE SUMMARY**                    Page 1 of 2

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CASE SUMMARY

**OTHER**

☑ Male        ☐ Female

☑ U.S. Citizen      ☐ Alien

Alias Name(s) _____

_____

This defendant is charged in:    ☐ All counts

☑ Only counts: 1, 2, 4

☐ This defendant is designated as "High Risk" per 18 USC 3146(a)(2) by the U.S. Attorney.

☐ This defendant is designated as "Special Case" per 18 USC 3166(b)(7).

Is defendant a juvenile?     ☐ Yes    ☑ No

IF YES, should matter be sealed?   ☐ Yes    ☐ No

The area of substantive law that will be involved in this case includes:

☐ financial institution fraud    ☐ public corruption
☐ government fraud           ☐ tax offenses
☐ environmental issues       ☐ mail/wire fraud
☑ narcotics offenses         ☐ immigration offenses
☐ violent crimes/firearms     ☐ corporate fraud
☐ Other: _____

_____

_____

**CUSTODY STATUS**

Defendant is **not** in custody:

a. Date and time of arrest on complaint: _____
b. Posted bond at complaint level on: _____
   in the amount of $ _____
c. PSA supervision?      ☐ Yes     ☐ No
d. Is a Fugitive         ☑ Yes     ☐ No
e. Is on bail or release from another district:
f. ☐ Has not been arrested but will be notified by summons to appear.
g. Warrant requested.     ☑ Yes     ☐ No

Defendant is **in** custody:

a. Place of incarceration:   ☐ State    ☐ Federal
b. Name of Institution: _____
c. If Federal: U.S. Marshal's Registration Number:
   _____
d. ☐ Solely on this charge. Date and time of arrest: _____
e. On another conviction:   ☐ Yes     ☐ No
   IF YES ☐ State     ☐ Federal    ☐ Writ of Issue
f. Awaiting trial on other charges: ☐ Yes     ☐ No
   IF YES ☐ State     ☐ Federal    AND
   Name of Court: _____

Date transferred to federal custody: _____

This person/proceeding is transferred from another district pursuant to F.R.CrP. ____ 20 ____ 21 ____ 400

---

**EXCLUDABLE TIME**

Determinations as to excludable time prior to filing indictment/information EXPLAIN: _____

_____

_____

_____

_____

Date November 13, 2007 _____

_Signature of Assistant U.S. Attorney_

BONNIE L. HOBBS
_Print Name_

2007 NOV 14  PM 2:48

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2007 Grand Jury      2:18-mj-0988-PAL

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 07-**07-01268** |
| Plaintiff, | I N D I C T M E N T |
| v. | [21 U.S.C. § 846: Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine; 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B): Possession with Intent to Distribute Cocaine; 21 U.S.C. §§ 841(a)(1), (b)(1)(A): Possession with Intent to Distribute Methamphetamine] |
| ALI KHALIL ELREDA, EPIFANIO MERCADO, ROBERT BELL, RICARDO NAVA, JUAN JOSE GALINDO, JUAN MANUEL GONZALEZ, FRANCISCO HIGUERA, JR., ALFONSO BERNAL BARRON, and DALISA JOHNSON, | |
| Defendants. | |

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

A.   OBJECTS OF THE CONSPIRACY

Beginning on or about August 7, 2006, and continuing to at least July 11, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendants ALI KHALIL ELREDA ("ELREDA"), EPIFANIO MERCADO ("MERCADO"), ROBERT BELL

1  ("BELL"), RICARDO NAVA ("NAVA"), JUAN JOSE GALINDO ("GALINDO"),

2  JUAN MANUEL GONZALEZ ("GONZALEZ"), FRANCISCO HIGUERA, JR.

3  ("HIGUERA"), and DALISA JOHNSON ("JOHNSON"), and others known and

4  unknown to the Grand Jury, conspired and agreed with each other

5  to knowingly and intentionally

6          (a) possess with intent to distribute and

7          (b) distribute

8  more than 5 kilograms of cocaine, a Schedule II narcotic drug

9  controlled substance, in violation of Title 21, United States

10  Code, Section 841(a)(1).

11  B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

12       ACCOMPLISHED

13       The objects of the conspiracy were to be accomplished in

14  substance as follows:

15       1.   Defendant ELREDA would introduce defendant MERCADO to

16  defendant BELL for the purpose of negotiating the sale of

17  multiple kilograms of cocaine by defendant MERCADO to defendant

18  BELL.

19       2.   Defendant MERCADO would supply defendant BELL with

20  multiple kilograms of cocaine, which defendant BELL would sell to

21  his drug customers.

22       3.   Defendant NAVA would transport multiple kilograms of

23  cocaine for defendant MERCADO.

24       4.   Defendants GALINDO, GONZALEZ, and HIGUERA also would

25  supply multiple kilograms of cocaine to defendant BELL, which

26  defendant BELL would sell to his drug customers.

27       5.   Defendant JOHNSON would assist defendant BELL in his

28  purchase of multiple kilograms of cocaine from defendant MERCADO

2

1  by conducting counter-surveillance for defendant BELL and

2  defendant NAVA.

3  C.   OVERT ACTS

4       In furtherance of the conspiracy and to accomplish the

5  objects of the conspiracy, defendants, and others known and

6  unknown to the Grand Jury, committed various overt acts on or

7  about the following dates, within the Central District of

8  California and elsewhere, including but not limited to the

9  following:

10      1.   On August 7, 2006, in a telephone conversation and

11  using coded language, defendant ELREDA told defendant MERCADO

12  that defendant ELREDA would take money from defendant BELL, and

13  defendant ELREDA would call defendant MERCADO so that defendant

14  MERCADO could pick it up the next day.

15      2.   On August 7, 2006, in a telephone conversation and

16  using coded language, defendant ELREDA told defendant MERCADO

17  that defendant BELL wanted five kilograms of cocaine, that

18  defendant MERCADO eventually would deliver ten or fifteen

19  kilograms of cocaine to defendant BELL, and that defendant

20  MERCADO could deliver the cocaine to defendant BELL on defendant

21  ELREDA's behalf.

22      3.   On August 7, 2006, in a telephone conversation and

23  using coded language, defendant ELREDA asked defendant BELL how

24  much cocaine defendant BELL needed, and defendant BELL told

25  defendant ELREDA that defendant BELL wanted five kilograms of

26  cocaine.

27      4.   On August 7, 2006, in a telephone conversation and

28  using coded language, defendant ELREDA told defendant MERCADO

3

1  that defendant BELL wanted five kilograms of cocaine that day,

2  and that defendant BELL would want up to fifteen kilograms of

3  cocaine at later times.

4      5.   On August 7, 2006, in telephone conversations and

5  using coded language, defendant ELREDA asked defendant MERCADO

6  what the price for the cocaine would be if defendant BELL paid

7  defendant MERCADO for the cocaine today, and defendant MERCADO

8  answered $12,300 per kilogram.

9      6.   On August 7, 2006, in a telephone conversation and

10  using coded language, defendant ELREDA told defendant BELL to

11  drop $100 off the price of each kilogram of cocaine.

12      7.   On August 7, 2006, in a telephone conversation and

13  using coded language, defendant BELL told defendant ELREDA

14  that if the cocaine was good, defendant BELL would buy ten

15  kilograms of cocaine from defendant MERCADO.

16      8.   On August 7, 2006, in a telephone conversation and

17  using coded language, defendant ELREDA told defendant MERCADO

18  that if the cocaine was good, defendant BELL would pay for ten

19  kilograms of cocaine right now, and defendant MERCADO said that

20  he would call defendant ELREDA to tell defendant ELREDA that the

21  cocaine was ready.

22      9.   On August 15, 2006, in a telephone conversation and

23  using coded language, defendant ELREDA and defendant MERCADO

24  discussed defendant MERCADO continuing to sell high quality

25  cocaine to defendant BELL.

26      10.  On August 24, 2006, in a telephone conversation and

27  using coded language, defendant ELREDA and defendant BELL

28  discussed the price that defendant MERCADO charged defendant BELL

1  for kilograms of cocaine.

2      11.   On October 5, 2006, in a telephone conversation

3  and using coded language, defendant ELREDA and defendant BELL

4  discussed defendant BELL continuing to conduct cocaine

5  transactions with defendant MERCADO.

6      12.   On October 31, 2006, in a telephone conversation and

7  using coded language, defendant BELL told defendant MERCADO that

8  a drug customer in Tennessee was going to pay $15,500 per

9  kilogram of cocaine.

10      13.   On October 31, 2006, in a telephone conversation and

11  using coded language, defendant BELL told defendant MERCADO that

12  defendant BELL was selling twenty to twenty-five kilograms of

13  cocaine per week, and that defendant BELL was waiting on someone

14  who wanted to purchase another ten kilograms.

15      14.   On October 31, 2006, in a telephone conversation and

16  using coded language, defendant MERCADO told defendant BELL that

17  defendant MERCADO would be out of town, and that his cousin,

18  defendant NAVA, would be available the next day to deliver eight

19  kilograms of cocaine that defendant MERCADO had, and that if

20  defendant BELL wanted them, he would sell them all to defendant

21  BELL.

22      15.   On November 1, 2006, in a telephone conversation and

23  using coded language, defendant NAVA told defendant BELL that

24  defendant NAVA had eight kilograms of cocaine.

25      16.   On November 1, 2006, in telephone conversations and

26  using coded language, defendant BELL and defendant NAVA discussed

27  the location for their drug deal and the presence of a police

28  car.

17.   On November 1, 2006, in a telephone conversation and using coded language, defendant JOHNSON told defendant BELL that she did not think that defendant NAVA should come into the parking lot because of the police.

18.   On November 1, 2006, defendant BELL, driving a gold Toyota Camry, and defendant NAVA, driving a white Toyota Camry that contained eight kilograms of cocaine, entered the parking lot of a Staples store in Bellflower, California, where both of them parked their cars.

19.   On November 1, 2006, defendant BELL got out of his car and entered defendant NAVA's car with the eight kilograms of cocaine.

20.   On November 1, 2006, defendant NAVA left the parking lot in his white Toyota Camry, after which the eight kilograms of cocaine was seized by law enforcement officers in Bellflower, California.

21.   On November 1, 2006, in a telephone conversation and using coded language, defendant ELREDA asked defendant BELL if the police were holding the cocaine that defendant NAVA had had in his car, and defendant BELL said yes.

22.   On November 1, 2006, in a telephone conversation and using coded language, defendant ELREDA told defendant BELL that defendant MERCADO had told defendant ELREDA that defendant MERCADO had eight or ten kilograms of cocaine left and wanted to get rid of them.

23.   On November 1, 2006, in a telephone conversation and using coded language, defendant BELL told defendant ELREDA that defendant NAVA had called defendant MERCADO and had told

1 | defendant MERCADO to call defendant BELL to get rid of defendant
2 | MERCADO's remaining eight or ten kilograms of cocaine.

3 |     24.  On November 1, 2006, in a telephone conversation and
4 | using coded language, defendant MERCADO told an associate of
5 | defendant ELREDA that defendant MERCADO would kill defendant
6 | ELREDA's associate if he did not give defendant MERCADO defendant
7 | ELREDA's telephone number.

8 |     25.  On November 1, 2006, in a telephone conversation and
9 | using coded language, defendant ELREDA told defendant MERCADO
10 | that defendant NAVA had been arrested, and gave defendant MERCADO
11 | defendant BELL's telephone number because defendant BELL had seen
12 | everything.

13 |     26.  On November 1, 2006, in a telephone conversation and
14 | using coded language, defendant ELREDA told defendant BELL that
15 | defendant MERCADO was looking for defendant BELL, and that
16 | defendant MERCADO would rip off defendant BELL if the police came
17 | after defendant MERCADO.

18 |     27.  On November 4, 2006, in a telephone conversation and
19 | using coded language, defendant ELREDA asked defendant BELL the
20 | price for one kilogram of cocaine, and defendant BELL said
21 | $13,000 per kilogram, but that defendant ELREDA should charge
22 | defendant ELREDA's drug customer $13,500 per kilogram.

23 |     28.  On November 4, 2006, in a telephone conversation and
24 | using coded language, defendant ELREDA informed his drug
25 | customer that the price for one kilogram of cocaine was $14,000,
26 | and that defendant BELL was providing a sample of cocaine to show
27 | to the drug customer.

28 |     29.  On November 29, 2006, defendants BELL and MERCADO

7

1   traveled with others from Los Angeles, California, to Nashville,
2   Tennessee for purposes of a drug deal.
3        30.   On December 1, 2006, defendant BELL took possession
4   of approximately one kilogram of cocaine, $302,190 in United
5   States currency, and miscellaneous drug packaging materials at
6   2211 Ladd Street, Clarksville, Tennessee, which subsequently was
7   seized by law enforcement officers.
8        31.   On December 3, 2006, in telephone conversations and
9   using coded language, defendant ELREDA and defendant BELL
10   discussed the police seizing the cocaine from defendant NAVA.
11        32.   On December 3, 2006, in telephone conversations and
12   using coded language, defendant ELREDA told defendant BELL that
13   defendant ELREDA may not want to do business with defendant BELL
14   any more, because defendant BELL may be watched by law
15   enforcement, and defendant ELREDA told defendant BELL to talk to
16   defendant MERCADO.
17        33.   On December 9, 2006, an unindicted co-conspirator
18   transported approximately twenty kilograms of cocaine in
19   Wabaunsee County, Kansas, in his truck.
20        34.   On December 16, 2006, in a telephone conversation and
21   using coded language, defendant MERCADO asked defendant GONZALEZ
22   if defendant GONZALEZ had spoken to defendant BELL.
23        35.   On December 16, 2006, in a telephone conversation and
24   using coded language, defendant GONZALEZ told defendant MERCADO
25   that defendant GONZALEZ had not spoken much to defendant BELL,
26   but that defendant GALINDO spoke to defendant BELL more because
27   GALINDO could provide forty to eighty kilograms of cocaine to
28   defendant BELL at a time.

1    36.   On December 16, 2006, in a telephone conversation and
2  using coded language, defendant GONZALEZ told defendant MERCADO
3  that defendant GONZALEZ had provided twenty kilograms of cocaine
4  to defendant BELL before.

5    37.   On December 27, 2006, in a telephone conversation and
6  using coded language, defendant ELREDA asked a source for
7  kilograms of cocaine, because defendant ELREDA had a guy who
8  wanted a couple of kilograms right now, and the source said he
9  would check.

10    38.   On December 27, 2006, in a telephone conversation and
11  using coded language, defendant ELREDA told the source for
12  cocaine, at the direction of defendant BELL, that he wanted
13  twenty kilograms of cocaine right now.

14    39.   On February 1, 2007, in a telephone conversation and
15  using coded language, defendant BELL told defendant GONZALEZ that
16  defendant BELL needed thirteen kilograms of cocaine, and
17  defendant GONZALEZ said he would call to see if he could get it.

18    40.   On February 1, 2007, in a telephone conversation and
19  using coded language, defendant GONZALEZ told defendant BELL that
20  a supplier had ten kilograms of cocaine and defendant GONZALEZ
21  had two kilograms of cocaine.

22    41.   On February 1, 2007, in a telephone conversation and
23  using coded language, defendant GONZALEZ asked defendant BELL if
24  they were going to meet at a restaurant.

25    42.   On February 1, 2007, defendant GONZALEZ transported
26  $95,000 in United States currency in the trunk of his Mercedes-
27  Benz in Compton, California, which currency was subsequently
28  seized by law enforcement officers.

Case 2:07-cr-01268-ODW   Document 62   Filed 11/14/07   Page 10 of 18   Page ID #:163

1    43.   On February 2, 2007, in a telephone conversation and

2  using coded language, defendant GONZALEZ told defendant BELL how

3  the Los Angeles County Sheriffs followed defendant GONZALEZ and

4  took the money.

5    44.   On February 22, 2007, in a telephone conversation

6  and using coded language, defendant MERCADO told defendant

7  ELREDA that defendant BELL had alerted law enforcement that

8  defendant NAVA and the unindicted co-conspirator had been

9  transporting cocaine in their vehicles.

10    45.   On March 30, 2007, defendant GALINDO maintained

11  possession, at his residence in Maywood, California, of

12  approximately 300 grams of cocaine, approximately $74,227 in

13  United States currency, a Royal Sovereign Cash Counting Machine,

14  a calculator, and miscellaneous materials for packaging kilograms

15  of cocaine.

16    46.   On April 2, 2007, in a telephone conversation and using

17  coded language, defendant BELL told an unindicted co-conspirator

18  that defendant GALINDO had been busted by the police for cocaine

19  and narcotics proceeds possession, and that defendant GONZALEZ

20  had been put in jail after being caught with money.

21    47.   On April 4, 2007, in a telephone conversation and using

22  coded language, defendant BELL asked defendant ELREDA if someone

23  could supply defendant BELL with cocaine, and defendant ELREDA

24  said that he had been making telephone calls, but there was no

25  one available.

26    48.   On April 11, 2007, in a telephone conversation and

27  using coded language, defendant BELL told defendant ELREDA that

28  defendant BELL wanted to purchase cocaine.

49.   On April 11, 2007, in a telephone conversation and using coded language, defendant ELREDA told defendant BELL that defendant ELREDA wanted about ten kilograms of cocaine per week to ship to New York.

50.   On April 11, 2007, in a telephone conversation and using coded language, defendant ELREDA gave defendant BELL the telephone number for a source of multiple kilograms of cocaine.

51.   On April 11, 2007, in a telephone conversation and using coded language, defendant BELL told defendant ELREDA that the source of cocaine said that the price was $18,000 or $19,000 per kilogram in New York, but that defendant BELL's people got $25,000 per kilogram.

52.   On June 26, 2007, in a telephone conversation and using coded language, defendant GALINDO told defendant BELL that the price of a kilogram of cocaine would be $15,500, and defendant BELL told defendant GALINDO that defendant BELL would pass for now.

53.   On June 26, 2007, in a telephone conversation and using coded language, defendant BELL and defendant HIGUERA discussed defendant HIGUERA supplying a kilogram of cocaine to defendant BELL, and defendant BELL inspecting the cocaine to ensure that it was good quality.

54.   On June 27, 2007, in telephone conversations and using coded language, defendant BELL and defendant HIGUERA discussed defendant HIGUERA supplying additional kilograms of cocaine to defendant BELL.

55.   On June 28, 2007, in telephone conversations and using coded language, defendant BELL and defendant HIGUERA discussed

1  defendant HIGUERA waiting to receive the additional cocaine that
2  he would deliver to defendant BELL.

3      56.  On June 29, 2007, in a telephone conversation and using
4  coded language, defendant HIGUERA told defendant BELL that
5  defendant HIGUERA might be able to get two, or perhaps as many as
6  five, kilograms of cocaine for defendant BELL.

7      57.  On July 10, 2007, in telephone conversations and using
8  coded language, defendant GALINDO and defendant BELL discussed
9  defendant GALINDO delivering cocaine to defendant BELL on
10 Thursday.

11     58.  On July 11, 2007, in a telephone conversation and using
12 coded language, defendant HIGUERA told defendant BELL that the
13 price of cocaine would be $15,800 per kilogram, and defendant
14 BELL told defendant HIGUERA that defendant GALINDO provided
15 cocaine to defendant BELL at $14,800 per kilogram every week.

16
17
18
19
20
21
22
23
24
25
26
27
28

12

COUNT TWO

[21 U.S.C. § 846]

A.   OBJECTS OF THE CONSPIRACY

Beginning on or about August 16, 2007, and continuing to at least August 29, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendants FRANCISCO HIGUERA, JR. ("HIGUERA") and ALFONSO BERNAL BARRON ("BARRON"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally

(a) possess with intent to distribute and

(b) distribute

more than 500 grams of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1.   Defendant HIGUERA would supply multiple kilograms of cocaine to his drug customers.

2.   Defendant BARRON would assist defendant HIGUERA by transporting multiple kilograms of cocaine for defendant HIGUERA's drug customers.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendants, and others known and unknown to the Grand Jury, committed various overt acts on or about the following dates, within the Central District of

13

California and elsewhere, including but not limited to the
following:

    1.   On June 26, 2007, in a telephone conversation and using
coded language, defendant HIGUERA and a drug customer discussed
defendant HIGUERA supplying a kilogram of cocaine to the drug
customer, and the drug customer inspecting the cocaine to ensure
that it was good quality.

    2.   On June 27, 2007, in telephone conversations and using
coded language, defendant HIGUERA and a drug customer discussed
defendant HIGUERA supplying additional kilograms of cocaine to
the drug customer.

    3.   On June 28, 2007, in telephone conversations and using
coded language, defendant HIGUERA and a drug customer discussed
defendant HIGUERA waiting to receive the additional cocaine that
he would deliver to the drug customer.

    4.   On June 29, 2007, in a telephone conversation and using
coded language, defendant HIGUERA told a drug customer that
defendant HIGUERA might be able to get two, or perhaps as many as
five, kilograms of cocaine for the drug customer.

    5.   On July 11, 2007, in a telephone conversation and using
coded language, defendant HIGUERA told a drug customer that the
price of cocaine would be $15,800 per kilogram.

    6.   On August 16, 2007, in telephone conversations and
using coded language, defendant HIGUERA and defendant BARRON
discussed picking up seven kilograms of cocaine from defendant
HIGUERA's cocaine supplier.

    7.   On August 29, 2007, defendant BARRON, followed by
defendant HIGUERA in a separate vehicle, transported

1  approximately three kilograms of cocaine in his car in Lynwood,
2  California, for delivery to defendant HIGUERA's drug customer,
3  which cocaine was seized by law enforcement officers.

15

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)]

On or about November 1, 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendants ROBERT BELL and RICARDO NAVA knowingly and intentionally possessed with intent to distribute approximately eight kilograms of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)]

On or about August 29, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendants FRANCISCO HIGUERA, JR. and ALFONSO BERNAL BARRON knowingly and intentionally possessed with intent to distribute approximately three kilograms of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)]

On or about November 6, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendant JUAN MANUEL GONZALEZ knowingly and intentionally possessed with intent to distribute more than five hundred grams, namely, approximately six hundred grams, of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

A TRUE BILL

/S/
_____
FOREPERSON

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

EILEEN M. DECKER
Assistant United States Attorney
Chief, National Security Section

PATRICK R. FITZGERALD
Assistant United States Attorney
Senior Litigation Counsel
National Security Section

BONNIE L. HOBBS
Assistant United States Attorney
National Security Section

18